UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **George J. Charest and Paula M. Charest** <br><br> Plaintiffs <br><br> v. <br><br> **Federal National Mortgage Assoc.** <br><br> Defendant. | Civ. A. No. 1:13-cv-11267-MBB <br><br><br> **Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss** |

## I. Introduction

Plaintiffs George and Paula Charest, through counsel, hereby oppose Defendant Federal National Mortgage Association's ("Fannie Mae") Motion to Dismiss because they have sufficiently pleaded claims under Chapter 93A and GMAC Mortgage, LLC ("GMAC") is not a necessary and indispensable party to this action. Where Fannie Mae, through its agent GMAC, misrepresented their eligibility for a modification, miscalculated their income, promised them a modification that it never provided, repeatedly circumvented their counsel and contacted them directly, and scheduled foreclosure sales while they were under review for a modification, the Plaintiffs respectfully request that this Court deny Defendant's Motion under Rule 12(b)(6). Further, Fannie Mae's agent GMAC is not a necessary or indispensable party because this Court may award complete relief absent its joinder and the Charests otherwise face a complete bar to recovery, thus the Plaintiffs respectfully request that "in equity and good conscience," this Court deny Defendant's Motion under Rule 12(b)(7).

1

## II. Background

The Charests filed their Complaint against Fannie Mae in response to its unfair and deceptive conduct, via its servicer-agent GMAC, in handling their loan modification applications under the Home Affordable Modification Program ("HAMP"). (Compl., Doc. No. 1-1). The Charests built their home in 1978 and currently live there with their daughter and grandchildren. (*Id.* at ¶ 18). They refinanced the mortgage in 2008, and Fannie Mae owns the Charests' mortgage. (*Id.* at ¶¶ 3, 19; **Exhibit A**, Fannie Mae Loan Lookup).[1] Around 2010, both the Charests suffered medical complications and surgeries and fell behind on their mortgage payments. (Compl. at ¶¶ 20-21). Now, however, the Charests are able to afford to resume reasonable mortgage payments under a loan modification. (*Id.* at ¶¶ 20, 30-31). During the following two years, the Charests submitted a number of loan modification applications and supporting financial documents in order to be reviewed for a HAMP modification. (*Id.* at ¶¶ 29-31, 34-35, 43-45). Their financial information demonstrated that they qualified for the same. (*Id.* at ¶ 30-31, 44-45).

The HAMP program was established in early 2009 to help millions of families modify and restructure their mortgage loans to avoid foreclosure. (*Id.* at ¶ 6). Mortgage servicers are required under HAMP to administer the loan-modification process in compliance with consumer protection laws. (*Id.* at ¶ 10). Fannie Mae is a government-

---

[1] Fannie Mae Loan Lookup Results confirming that it owns the Charests' mortgage. In determining whether to deny a motion to dismiss, a court may consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, and items appearing in the record of the case. *Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009).

sponsored enterprise chartered by Congress with a mission to provide liquidity, stability, and affordability to the U.S. housing and mortgage markets. (*Id.* at ¶ 11). Fannie Mae established comprehensive regulatory guidelines prescribing how its mortgages must be handled by the servicers who administer foreclosures and loan modifications. (*Id.* at ¶¶ 12-13) (citing Fannie Mae's Single-Family Servicing Guide).

While Fannie Mae owns their loan, GMAC serviced the Charests' mortgage on behalf of Fannie Mae and under its direction and control. (Compl. at ¶¶ 4, 11-16). GMAC serviced their mortgage pursuant to a contract with Fannie Mae, which incorporated by reference Fannie Mae's servicing guidelines. (*Id.* at ¶¶ 13-15). GMAC filed for bankruptcy, and servicing for the Charests' mortgage recently transferred to Ocwen Loan Servicing, LLC. (*Id.* at ¶¶ 4-5, 17). Due to GMAC's bankruptcy, borrowers like the Charests are now generally prohibited from initiating actions against it because of the automatic stay. (*Id.* at ¶ 5).

In 2010, GMAC, on Fannie Mae's behalf, solicited the Charests and offered to consider them for a loan modification. (*Id.* at ¶ 21). In May 2011, GMAC falsely asserted that Fannie Mae would not allow principal forbearance in a loan modification. (*Id.* at ¶ 26). Fannie Mae guidelines did and do allow for a forbearance. (*Id.* at ¶ 27). This false statement deprived the Charests of the opportunity to save their home from foreclosure. (*Id.* at ¶ 28).

In their December 2010 loan modification application, the Charests' monthly income was approximately $4,372. (*Id.* at ¶ 30). They would qualify under HAMP for a reduced monthly mortgage payment of 31% of their gross income, or $1,355. (*Id.*). Fannie

3

Mae, however, failed to do so, instead falsely stating that they were ineligible for a loan modification. (*Id.*). Similarly, in their April 2011 application, the Charests' income was approximately $3,713, and Fannie Mae could have reduced their monthly mortgage payment to $1,151 but again failed to do so stating that they were ineligible. (*Id.* at ¶ 31).

Fannie Mae, through GMAC, also claimed the Charests were denied for a loan modification because they did not live in their house – but the Charests have lived in their home since 1978. (*Id.* at ¶ 32). While these loan modification applications were under review, Fannie Mae through GMAC repeatedly requested documentation that had already been provided, including in January, March, April and May 2011. (*Id.* at ¶¶ 43-44). All of these actions caused delays in processing their applications, and further deprived them of a loan modification that would have reduced their monthly mortgage payment, reduced the amount of interest paid over the life of the loan, and saved their home from further foreclosure proceedings. (*Id.* at ¶¶ 33, 43-44).

In July 2011, the Charests again submitted a loan modification application, with all the documentation required to evaluate them for a modification. (*Id.* at ¶ 34). In response, GMAC, on Fannie Mae's behalf, repeatedly requested information the Charests had already provided including: bank statements, profit-and-loss statement and tax return. (*Id.* at ¶¶ 35, 45). Finally, their application was denied allegedly due to insufficient income; incorrect, as the Charests' income entitled them to a HAMP loan modification. (*Id.* at ¶ 36).

Instead of providing the Charests with a HAMP loan modification, Fannie Mae through GMAC offered them an unaffordable "in-house" loan modification that actually

4

*increased* their monthly payment by approximately $200 per month. (*Id.* at ¶ 37). The Charests requested the amounts calculated for their income to support an increased payment, and Fannie Mae through GMAC admitted it had miscalculated their income attributing $3,937 in monthly gross income to Mrs. Charest alone, when in fact she only received $1,750. (*Id.* at ¶ 39). GMAC, for Fannie Mae, then assured the Charests it would provide them with a new trial modification and a new, correct payment was being calculated for them and would be sent to them. (*Id.* at ¶ 40). However, that new modification never came, and GMAC resumed collection activity for Fannie Mae. (*Id.* at ¶ 41).

Although HAMP guidelines state that a mortgage may not be referred to foreclosure if a homeowner has not been given an opportunity to apply for HAMP, and that a foreclosure must be canceled once a homeowner has applied for HAMP,[2] GMAC and Fannie Mae scheduled the foreclosure of the Charests' home for January 13, 2011, May 16, 2011, June 1, 2011 and January 19, 2012. (*Id.* at ¶¶ 46-48). At all of those times, the Charests were under review for a loan modification. (*Id.* at ¶ 48).

Separately, on November 30, 2010, the Charests requested that all communications be directed to their attorney. (*Id.* at ¶ 50). Fannie Mae through GMAC confirmed receiving the request by letter dated December 10, 2010. (*Id.*). Nevertheless, it persisted in communicating directly with the Charests, including but not limited to letters sent in January, February and March 2011. (*Id.*).[3]

---

[2] Fannie Mae Servicing Guide Announcement 09-05R, Feb. 25, 2010, p. 3, available online at http://bit.ly/1eebjc8, incorporated by reference in Compl. at ¶ 13.

Fannie Mae removed this case to this Court on May 24, 2013. (Doc. No. 1). The parties agreed to extend the time for it to respond to the Complaint, and Fannie Mae filed the instant Motion on July 19, 2013. (Doc. No. 18).

### III. Standard

The short and plain statement required by Fed. R. Civ. P. 8(a)(2) must simply "possess enough heft to 'show that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (internal quotations omitted); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (calling Rule 8 a "simplified notice pleading standard"). A complaint is plausible on its face when "plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ascroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). A court must accept as true the factual allegations in the plaintiff's pleadings and must make all reasonable inferences in favor of the plaintiff. *Rivera v. Rhode Island*, 402 F.3d 27, 33 (1st Cir. 2005). The inquiry focuses on "the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011).

Fed. R. Civ. P. 19 provides for "joinder of required parties when feasible, Fed. R. Civ. P. 19(a), and for dismissal of suits when joinder of a required party is not feasible and that party is indispensable, Fed. R. Civ. P. 19(b)." *Bacardí Int'l Ltd. v. Suárez & Co.*, 719 F.3d 1 (1st Cir. 2013). Whether a person is indispensable, and a lawsuit must be dismissed in his or her absence, "can only be determined in the context of particular litigation."

---

[3] There was a scrivener's error in Plaintiffs' Complaint, and the calls occurring after December 1, 2010 were in January through March 2011.

*Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118 (1968) (citations omitted).

### IV. Argument

**A.  Plaintiffs' Complaint Sufficiently Alleges that Defendant Violated Massachusetts Chapter 93A**

HAMP violations are viable claims for relief under Chapter 93A where plaintiffs allege that the defendants misrepresent the status of their applications, their rights under HAMP, or their eligibility for permanent loan modifications. *Dill v. Am. Home Mortg. Servicing, Inc.*, ___ F. Supp. 2d ___, 2013 WL 1292404, at *4 (D. Mass. Mar. 28, 2013) (denying motion to dismiss on Chapter 93A claims) (citations omitted).

**1.  *GMAC's acts and omissions are violations of Massachusetts Chapter 93A***

Chapter 93A is a remedial statute intended to protect consumers and one where it is per se unfair or deceptive to fail to comply with existing statutes, rules or regulations meant to protect the public's health, safety, or welfare. *See* 940 Mass. Reg. § 3.16. The standard for Chapter 93A claims is set forth in *Iannacchino v. Ford Motor Co.*, 451 Mass. 623 (2008). *Iannacchino* provides that "a consumer must have been injured by another person's use or enjoyment of an unfair or deceptive act or practice" to sufficiently plead Chapter 93A claims. *Id.* at 629 (internal quotations omitted).

It is well-settled law that violations of HAMP which are unfair or deceptive in and of themselves can create a viable claim under Chapter 93A. *See e.g.*, *Morris v. BAC Home Loans Servicing, L.P.*, 775 F. Supp. 2d 255, 258-59 (D. Mass. 2011) (citing *Bosque v. Wells Fargo Bank, N.A.*, 762 F. Supp. 2d 342, 352-54 (D. Mass. 2011) and *Speleos v. BAC Home*

*Loans Servicing, L.P.*, 755 F. Supp. 2d 304, 310-11 (D. Mass. 2010)).[4] Further, recovery under Chapter 93A for HAMP violations is compatible with HAMP objectives. *See Blackwood*, 2011 WL 1561024, at *4 ("Allowing homeowners facing foreclosure to recover damages under chapter 93A for a defendant's failure to comply with HAMP is compatible with the HAMP objective of providing relief to defaulting borrowers so as to enable them to stay in their homes."); *Morris*, 775 F. Supp. 2d at 262 ("given the limited nature of Freddie Mac's actual enforcement power, there is nothing about recovery under Chapter 93A that actively conflicts with the enforcement scheme in the HAMP guidelines.").

HAMP violations support Chapter 93A claims following a three-part inquiry:

> (1) have plaintiffs adequately plead that defendant violated HAMP; (2) are those violations of the type that would be independently actionable conduct under 93A even absent the violation of a statutory provision (*i.e.* are the violations unfair or deceptive); and (3) if the conduct is actionable, is recovery pursuant to chapter 93A compatible with the 'objectives and enforcement mechanisms' of HAMP.

*Morris*, 775 F. Supp. 2d at 262 (citations omitted). Further, Chapter 93A claims based on HAMP violations that survive motions to dismiss "allege[] a pattern of misrepresentations, failure to correct detrimental errors, and/or dilatory conduct" that courts found could amount to unfair or deceptive practices. *Okoye v. Bank of New York Mellon*, No. 10-011563, 2011 WL 3269686, at *9 (D. Mass. Jul. 28, 2011). Actionable violations include a bank's withholding and changing information, providing pretextual

---

[4] *See also Ording v. BAC Home Loans Servicing, LP*, No. 10-10670, 2011 WL 99016 (D. Mass. Jan. 10, 2011) (violation of HAMP guidelines is Chapter 93A violation); *Durmic v. J.P. Morgan Chase Bank, N.A.*, No. 10-10380, 2010 WL 4825632 (D. Mass. Nov. 24, 2010) (viable claims include Chapter 93A); *Blackwood v. Wells Fargo Bank, N.A.*, No. 10-10483, 2011 WL 1561024 (D. Mass. Apr. 22, 2011) (same); *Stagikas v. Saxon Mortg. Servs., Inc.*, 795 F. Supp. 2d 129 (D. Mass. 2011) (same); *In re Bank of Am. Home Affordable Modification Program (HAMP) Contract Litig.*, No. 10-0193, 2011 WL 2637222 (D. Mass. July 6, 2011) (same); *Belyea v. Litton Loan Servicing, LLP*, No. 10-10931, 2011 WL 2884964 (D. Mass. July 15, 2011) (same).

reasons for denying modification, and misrepresenting the process and status of the loan. *Id.* at *11.

Servicers should not proceed with a foreclosure sale while the borrower is under review for a loan modification. *See Kirtz v. Wells Fargo Bank, N.A.*, No. 12-10690, 2012 WL 5989705, at *13 (D. Mass. Nov. 29, 2012) ("[plaintiff] has also alleged that Wells Fargo scheduled a foreclosure while she was being considered for a loan modification. Such conduct could also constitute an unfair or deceptive practice.") (citing *Orozco v. GMAC Mortg., LLC*, No. 11-11135, 2012 WL 4581092, at *4 (D. Mass. Oct. 1, 2012)). Separately, businesses are liable for unfair or deceptive acts and practices governed by state statutes and regulations. M.G.L. c. 93A, § 2(c). Those prohibit offering a loan that the originator knows the borrower will be unable to afford to repay, 940 C.M.R. 8.06(15); and attempting to collect a debt if a creditor "communicates directly with the alleged debtor after notification from an attorney representing such debtor that all further communications relative to the debt shall be addressed to him," M.G.L. c. 93, § 49. Those violations are per se violations of Chapter 93A.

The Charests' Complaint has specifically referred to all of the same criteria and the kinds of allegations which were deemed sufficient to state a claim in *Okoye* and *Morris*. The allegations point to particular HAMP guidelines that have been routinely ignored throughout the Charests' application process, and the repeated delays, false statements, and denials of applications for modification cited to in the Complaint provide the basis for the necessary pattern of misrepresentation, dilatory conduct, and deceit which are actionable under Chapter 93A. As the Charests alleged, the unfair and deceptive acts are

9

more than simply failing to evaluate a single application or making an error in determining eligibility. Fannie Mae through GMAC repeatedly deceived them while reviewing their mortgage loan modifications, scheduling foreclosures while they were under review, and contacting them despite acknowledging that they were represented by counsel.

Furthermore, the Charests alleged that their income qualified them for a loan modification, and that Fannie Mae knew they were under review when it pursued foreclosure. The Charests are not asserting that everyone who holds a subjective belief and desire that they should be given a HAMP modification is entitled to one. Instead, they assert that a borrower should be granted a modification under HAMP if he or she meets the specific criteria under the guidelines that financially qualify him or her for an affordable payment, which is beneficial to the borrower, the servicer, and the investor. In this case, the Charests presented specific factual allegations within their Complaint that they were in fact qualified for such a modification.

Here, the Charests also sufficiently alleged damages under their Chapter 93A claim. It is enough that they stated the economic injury in general terms, without specific amounts, and that Fannie Mae's conduct plausibly placed them in a worse position than they would have been if Fannie Mae had not engaged in the unfair and deceptive conduct. *See Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 241-42 (1st Cir. 2013) (plaintiff sufficiently pleaded loss of equity in home and damage to credit ratings which placed her in a worse position) (citations omitted); *Stagikas*, 795 F. Supp. 2d at 137 (damages including "increased interest on the debt, a negative impact on plaintiff's credit history, and the loss of economic benefits of the loan modification" were enough to support

Chapter 93A claim); *Dill*, 2013 WL 1292404, at *4 (plaintiffs sufficiently alleged damages "such as fees incurred to avoid foreclosure and harm to Plaintiffs' credit.") (citations omitted). Thus, where the Charests alleged the unfair and deceptive acts and practices caused further delays, increased costs and fees paid over the life of the loan, and deprivation of a modification that would have saved their home from foreclosure they sufficiently alleged damages under Chapter 93A.

Defendant's motion to dismiss should be denied as the Charests sufficiently alleged that Fannie Mae engaged in unfair and deceptive conduct, including its failure to evaluate them for a modification in good faith while continuing to solicit them for a modification, and merely providing pretextual, false, and misleading reasons for each denial. These allegations are sufficient to state a plausible claim under Chapter 93A.

### 2. *Fannie Mae is liable for GMAC's actions under agency principles*

Fannie Mae is vicariously liable for servicing abuses through its agency relationship with GMAC, the mortgage servicer. Actual or apparent authority is proven by conduct of the principal toward the agent. *See* Rest. (3d) of Agency, § 2.01 (2006). The servicing agreement between the mortgage owner and servicer is evidence of actual authority. *In re Mortg. Lenders Network, USA, Inc.*, 380 B.R. 131, 133-34, 140 (Bankr. Del. 2007). Apparent authority may cover circumstances where a servicer acts beyond the scope of its actual authority. *See* Rest. (3d) of Agency, § 2.03 (2006), cmt. A (apparent authority "applies to actors who appear to be agents but are not, as well as to agents who act beyond the scope of their actual authority."). Thus, a mortgage owner is vicariously liable for a servicer's violations through actual and/or apparent authority.

Other courts have held mortgage owners liable for tortious conduct or statutory violations committed by servicers. *See In re Hart*, 246 B.R. 709, 735-36 (Bankr. D. Mass. 2000) (Fannie Mae vicariously liable for GMAC's servicing violations under Chapter 93A) (citing *Blanchette v. Cataldo*, 734 F.2d 869 (1st Cir. 1984)); *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961 (6th Cir. 1998) (principal could be liable for FCRA violation committed by agent). *See also* Rest. (3d) of Agency, § 7.08 (2006). Specifically, the *Hart* court found Fannie Mae vicariously liable for "violat[ing] Fannie Mae's own servicing guidelines, which encouraged the avoidance of foreclosure." *Hart*, 246 B.R. at 735-36.

Here, GMAC acted with actual authority as Fannie Mae's agent pursuant to the contract it entered into with Fannie Mae. That contract incorporated by reference the HAMP guidelines and Fannie Mae's Single-Family Servicing Guide. Thus, in reviewing the Charests' loan modification application, GMAC acted under Fannie Mae's power and control. Further, GMAC purportedly denied their modification applications based on restrictions Fannie Mae put into place. Fannie Mae is also vicariously liable for any GMAC actions taken outside the scope of its actual authority, under agency principles for apparent authority, because Fannie Mae delegated all servicing responsibility to GMAC.

Defendant's argument that it cannot be held liable for claims arising out of HAMP violations is belied by the fact that courts have previously held Fannie Mae liable. *See Hart*, 246 B.R. at 735-36; *see also Speleos*, 755 F. Supp. 2d at 310-11 (D. Mass. 2010) (denying motion to dismiss for negligence claim based on HAMP violation).

Thus, Fannie Mae is vicariously liable for GMAC's unfair and deceptive acts and practices, just as other principals are accountable for their agents' acts and practices.

**B.        GMAC is Not a Necessary and Indispensable Party to This Action**

GMAC is not a required party, because this Court can accord complete relief among the existing parties without risking its ability to protect its interests or exposing Fannie Mae to multiple or inconsistent obligations. Assuming *arguendo* that it was required, joinder would not be feasible because GMAC is protected by the automatic stay in its bankruptcy proceeding. *See* 11 U.S.C. § 362. GMAC is also not an indispensable party, where this Court can accord complete relief among the existing parties and the Charests face a complete bar to recovery from GMAC or Fannie Mae for the injuries they suffered due to Defendant's unfair and deceptive acts and practices if this case is dismissed.

A court must first determine whether an absent party is required, or whether if "in that person's absence, the court cannot accord complete relief among existing parties" or their absence may "impair or impede the person's ability to protect the interest" or risk multiple or inconsistent obligations on an existing party. Fed. R. Civ. P. 19(a); *see also Provident Tradesmens*, 390 U.S. at 108. Courts have consistently held that "Rule 19 does not require joinder of principal and agent." *Dennis v. Wachovia Sec., LLC*, 429 F. Supp. 2d 281, 290 (D. Mass. 2006) (citations omitted); *see also Wylain, Inc. v. Kidde Consumer Durables Corp.*, 74 F.R.D. 434, 437 (D. Del. 1977) ("most important equitable consideration is 'whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder'"). Joint tortfeasors are not indispensable parties, and "Rule 19 does not require joinder of persons against whom [parties] have a claim of contribution." *Id*.

Rule 19(b) then lays out four non-exclusive facts to determine whether or not an absent party is indispensable:

> (1) the extent to which a judgment rendered in [her] absence might prejudice [her] or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: protective provisions in the judgment; shaping the relief; or other measures; (3) whether a judgment rendered in [her] absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). A defendant may not obtain a windfall escape from liability by arguing joinder of its agent is necessary and indispensable to a case. *Provident Tradesmens*, 390 U.S. at 112. Further, where an existing party "vigorously address[es]" the absent party's interests, there is no need to protect her from a threat of serious injury. *See Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 43-44 (1st Cir. 2009)).

In an analogous context, Truth in Lending claims based on a servicer's failure to identify the mortgage owner are properly brought against its principal, the same mortgage owner. *See e.g.*, *Khan v. Bank of New York Mellon*, 849 F. Supp. 2d 1377, 1379-82 (S.D. Fla. Mar. 19, 2012) (owner could be vicariously liable for its agent-servicer's TILA violations) (citing *Consumer Solutions REO, LLC v. Hillery*, No. 08-4357, 2010 WL 144988, at *3 (N.D. Cal. Jan. 8, 2010) (where consumer "would be left essentially without a remedy absent some form of vicarious liability.")). Finally, Fannie Mae's arguments conflate the inquiry under Rule 19, as explained by the Supreme Court:

> To say that a court "must" dismiss in the absence of an indispensable party and that it "cannot proceed" without him puts the matter the wrong way around: a court does not know whether a particular person is

"indispensable" until it had examined the situation to determine whether it can proceed without him.

*Provident Tradesmens*, 390 U.S. at 119.

In this case, the Charests sufficiently stated claims based upon Fannie Mae's false statements, empty promises, and delays while processing their loan modification applications through its agent GMAC. The Charests further alleged that Fannie Mae, through GMAC, unlawfully scheduled foreclosures while they were under review for HAMP loan modifications and communicated with them directly after acknowledging that they were represented by counsel, all in violation of Chapter 93A. GMAC cannot join this case because these claims for monetary relief are not permitted claims and would violate the automatic stay in its bankruptcy proceeding. Plaintiffs would have no remedy if this case is dismissed because they cannot later sue GMAC (Def.'s Mot. at 18) for the same reasons, and they have no alternate forum to pursue these claims.

There is no risk of inconsistent rulings or multiple obligations here, because the Charests cannot pursue either Fannie Mae or GMAC in another proceeding. While Fannie Mae argues that GMAC is prejudiced because Fannie Mae can terminate its contract with GMAC, all servicing previously handled by GMAC has already transferred to Ocwen. *See In re: Residential Capital, LLC*, No. 12-12020, Doc. No. 2246 (Bankr. S.D.N.Y. Nov. 21, 2012).[5] GMAC and Fannie Mae's interests are aligned in this case, which revolves around whether the agent GMAC's actions violated Chapter 93A, thus Fannie Mae will vigorously address GMAC's interests in defending this lawsuit. There is little risk their interests will later conflict, because Fannie Mae cannot sue GMAC for

---

[5] Available at http://bit.ly/18Uscf5, incorporated by reference in Compl. at ¶ 17.

indemnity without violating the automatic stay – just as the Charests cannot enjoin GMAC without violating the automatic stay.[6] Finally, any judgment issued in GMAC's absence is adequate because Fannie Mae is vicariously liable for its conduct as its principal, and agents need not be joined as outlined, *supra*.

Analyzing all four factors in equity and good conscience, complete relief can be afforded among the parties in this case in GMAC's absence, and the Charests would have no remedy if this action is dismissed for nonjoinder. While Fannie Mae cites *Z & B Enterprises* for the proposition that GMAC is a necessary party, that case involved parallel litigation where the plaintiffs sued the agents in state court and the principal in federal court. *Z & B Enterprises, Inc. v. Tastee-Freez Int'l, Inc.*, 162 Fed. Appx. 16, 17-18 (1st Cir. 2006).[7] In *Z&B*, the First Circuit noted the possibility that the state and federal courts could reach different outcomes for cases involving the same facts and issues. *Id.* at 20 ("[defendant-principal] could be subject to inconsistent or double obligations"). *Z&B* is distinguishable from the case at bar because the Charests did not and cannot sue GMAC in another forum. Indeed, even Fannie Mae agrees that they cannot sue GMAC in any other forum without violating the Automatic Stay. *See* Def.'s Mot. at 16. As such, Fannie

---

[6] Fannie Mae's argument that Plaintiffs have an adequate remedy because the Treasury Department or Fannie Mae could pursue GMAC on their behalf is misplaced. If this action is dismissed, the Charests face imminent foreclosure proceedings on their home, and upon information and belief Fannie Mae did not pursue claims against GMAC or terminate its contract with GMAC previously when both companies were held accountable for similar violations under Chapter 93A. *See Hart*, 246 B.R. at 735-36.

[7] Similarly, Fannie Mae cites to *Downing v. Globe Direct LLC*, 806 F. Supp. 2d 461 (D. Mass. 2011), for the proposition that GMAC is a necessary and indispensable party because an adverse judgment could weaken GMAC's position in future settlement negotiations. *See* Def.'s Mot. at 14, 17-18. However, neither party can later sue GMAC over these claims without violating the automatic stay, and the First Circuit later affirmed the *Downing* dismissal on separate grounds, failing to reach the Rule 19 question of indispensable parties. *Downing v. Globe Direct LLC*, 682 F.3d 18, 22 n.5 (1st Cir. 2012).

Mae does not run the risk of inconsistent or double obligations, but the Charests would face a complete bar to recovery for the injuries they suffered.

Defendant's motion to dismiss should thus be denied as the Charests sufficiently alleged that Fannie Mae engaged in unfair and deceptive conduct, including its failure to evaluate them for a modification in good faith while continuing to solicit them for a modification, and merely providing pretextual, false, and misleading reasons for each denial. These allegations are sufficient to state a plausible claim under Chapter 93A, and GMAC need not be joined in this action in equity and good conscience for this Court may award complete relief absent its joinder and the Charests otherwise face a complete bar to recovery.

## V. Conclusion

For the foregoing reasons, Plaintiffs request that this Court deny Defendant's Motion to Dismiss, as the Plaintiffs have sufficiently stated a claim under M.G.L. c. 93A.

Respectfully submitted,

/s/ *Danielle M. Spang*
Josef C. Culik (BBO #672665)
Danielle M. Spang (BBO #684365)
CULIK LAW PC
18 Commerce Way, Suite 2850
Woburn, Massachusetts 01801
Tel. (617) 830-1795
Fax (617) 830-1576
jculik@culiklaw.com
dspang@culiklaw.com

Attorneys for Plaintiffs George J. Charest and Paula M. Charest

August 2, 2013

## CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 2, 2013.

                                        /s/ *Danielle M. Spang*
                                        Danielle M. Spang